Markov Crane and Rigging Company against Greenfield Products, LLC, and because we have the cross appeal here, Mr. Wallen, you can go first, then Mr. Collins, you can respond and also present your initial argument on the cross appeal, then Mr. Wallen, you can do a responsive argument on the cross appeal and rebuttal on the principal appeal, and then Mr. Collins, your rebuttal on the cross appeal, and how you split up the time between the two parts that each of you have is up to you, so Mr. Wallen, you may proceed. Sure. Good morning, Your Honors. I'm Todd Wallen. May it please the Court? Todd Wallen on behalf of Markov Crane. There are two issues on Markov Crane's appeal. The main issue is the reduction in its product liability award based on comparative fault determination. Greenfield admits in its briefing that its defense in this case was contributory negligence, and it's right to do so, because unlike a lot of states where comparative negligence has replaced contributory negligence, that's not Arizona. Arizona retains contributory negligence as a substantive defense. The only change with the adoption of comparative fault is the effect of a finding of contributory negligence, which changes it from an absolute defense verdict to a matter of apportionment. And there's actually a good discussion of that in the Arizona appellate case, Franklin v. Clement, 382 Pacific 3rd 802, where the court talks about the relationship between comparative negligence and contributory negligence and states, quote, comparative negligence is not triggered until the jury determines that contributory negligence exists. Thus, the existence of contributory negligence is a prerequisite to the exercise of comparative negligence and the exercise of apportionment. The defense here is undisputedly contributory negligence, and the problem for Greenfield is that Arizona statute 12-2509B expressly provides that there is no contributory negligence as a matter of law in fraud and liability actions in Arizona. So Greenfield's defense here does not exist, and it should not have been entertained. Now, Greenfield seems to suggest that Arizona statute 12-2506, which talks about apportionment of fault, somehow nullified 12-2509B because 2506 requires apportionment of, quote, fault among all tort feasors, and fault is defined to include contributory negligence. But that reading of the statute just isn't right. Under 12-2509B, there is no contributory fault to apportion in a product liability case. The reference to contributory negligence, but there still be a defense of product misuse? Now, maybe that's a high standard, but would that still be a defense despite the fact that there could have been defenses for 2509B? Yes, Your Honor. There could have been defenses for product misuse or for assumption of the risk. Neither was established in this case, but those are the only common law defenses to product liability in Arizona. Contributory negligence falling outside of product misuse, which is unforeseeable use of the product, or no knowledge of the defect and then use of it anyway is barred under Arizona law. It's just not a defense. But then what do you make of the broad definition of fault in 2506, which lists a lot of things in addition to misuse? Yeah, well, it does reference, but really, as any applicability here, potentially, is the reference to contributory negligence. Because that's what we're dealing with, is contributory negligence over Arizona. That's just what the plaintiff did, how they contributed to their own injuries. And Jimenez addressed that, what do you call it? He addressed the interaction between 2506, the comparative fault statutes, and 2509B. At page 687 of the opinion, Jimenez quote, the statute expressly puts a reduction in damages for a plaintiff's contributory negligence in strict liability claims, and allows such a reduction in negligence claims. The language in 2506F is merely brought to incorporate contributory negligence where a defense of contributory negligence is possible, such as in a negligence act. It does not mean that the statute supersedes or nullifies a statute in the same section of the Arizona statute, 2509B. And the Arizona Supreme Court has made that clear. So, the court needs to look no further than 2509B to conclude that the reduction of Marco Crain's product liability damages below was erroneous. Nevertheless, I'd like to, some of the cases, or the cases relied on by Mr. Collins, which are primarily concerned in Bernal. Actually, I dealt with Bernal quite extensively in my briefing, so let me focus on Sarge for a second. That was a rear-end collision. Really, that question, I'm just, the broad literal reading of 2509B that you're adopting, wouldn't that eliminate product misuse as a defense, too? No. Because it says, except that contributory negligence, as distinguished from assumption of rest, is not a defense to a claim alleging strict liability toward including any product liability action. So, Ryan, I think that, I mean, that was the entire issue in Jimenez. And the Jimenez court went to great lengths to say, no, misuse is not contributory negligence, just like it's always been in common law. They've been sort of viewed separately. And it survives this language. Out of apportionment. And they said it survives that language in 2509B, correct? Right, because it doesn't say product misuse is not a defense. In fact, the Arizona statutes, look, there's a product liability section that expressly, S-682 and 12-683 expressly tell you what the recognized defenses are to product liability. 682 adopts the common law defenses, such as assumption of the risk. It would also adopt product misuse. 683 lists four defenses to product liability that are added under the statutory scheme. And they are state-of-the-art product misuse, which was a common law thing, and now is also a statutory thing. I think there's alteration or modification of products. And then the fourth is excessive use of something like a food product where it's safe to consume a certain quantity, but not when you, you know, I guess the poison that's in the dosage kind of thing. Those are the recognized defenses. The defense here of contributory fault, no matter how it's, you know, phrased or characterized, is not listed as a defense in the Arizona statutes. And 2509B expressly excludes it. So, now getting back to Zurn and why Zurn doesn't apply. Mr. Collins suggests that it's controlling here. But that case was a rear-end collision where an intoxicated driver slammed into a plaintiff. The plaintiff only brought a crash-worthiness product claim against Ford, the designer of his vehicle. Ford tried to assert that the intoxicated driver was partially at fault and to apportion damages between the two of them. And it was allowed to do so. And the damages came back apportioned 70-30-70 for the intoxicated driver. And on appeal, the plaintiff suggested that apportionment's not proper because the sole focus is on whether or not this product was crash-worthy and they should have anticipated, you know, drugs crashing into me. The appellate court, Arizona Zurn, looked at the statute 2506 and said, this plainly applies comparative fault to all Ford vehicles whether they're parties or not in the action. Basically, it's all the place. Isn't it very odd, though, then, I mean, given that result, that if, you know, if the accident is, you know, partly the fault of the defective product and partly the fault of, you know, a third party who's drunk who may be judgment-proof, you only get the part that was the fault of, you're only effectively going to be able to recover the part that was the fault of the manufacturer. But if it was partly the fault of the defective product and partly your own fault, then you get 100%. That seems very odd. So how do you account for that? To the contrary, to the contrary, though. If you were allowed to get a complete recovery against the manufacturer in that concern, you could sue the intoxicated driver, make a recovery for, say, 60% of your damages, and then sue the manufacturer for 100%. It can't be, you know, the other way around. The point of product liability law is to, A, increase the burden on the manufacturers by imposing strict liability on them. They don't have to be negligent. And, B, to maximize the consumer's recovery by taking away contributory or comparative negligence on their part. And the Zurn result does not undermine those policies because if the plaintiff wanted to make a full recovery, what the court's basically said is sue the intoxicated driver to get a double recovery by suing and getting a bunch of money from the intoxicated driver and then hold the manufacturer to complete liability. And the same thing happened in Bernal. So it makes perfect sense under Arizona law. Now, I'd also like to address the idea that the contributory negligence is limited to a failure to discover a defect or protect against its possibility. And while that is definitely in the case law, particularly the Miller opinion, I think I'm kind of running low on time. I want to focus on this issue, if that's okay. Real quick, that phrase can be, you know, victimized by semantics. And a good example is Justice Bartone's, the scenario that he states in his concurring opinion and amendments at page 872 of the Pacific Reporter. And he says, suppose a plaintiff mishandles a gun at a firing range. He is not careful about where he points it when the safety is on. Suppose further that because of a product defect, the safety does not work and he's injured. Plaintiff's conduct is contributory negligence. Now, there are a couple ways to look at this scenario. You could say the gunslinger's negligence was just him being not careful about where he pointed the gun. But that's only so if the safety's not working. Now, you could also say that he didn't protect against the possibility of the safety not working. In a way, it's contributory negligence. It's just a matter. It's the same thing to be said here. You know, Mr. Collins says that Mark McRae's driver was careless in driving at an unreasonable speed. But unreasonable for what? There was no showing that he violated any speed limit. There was no showing that a reasonable commercial that he reached when he accelerated 15 miles an hour after we had the turn. It's only unreasonable in light of the fact that that dolly is defective. It's the same thing as Justin's scenario. And it's just not a defense to... So you can call it carelessness or you can call it failure to protect against the possibility of that dolly will tip once you hit 12 miles an hour, which is what the experts said. This is classic contributory negligence. It's not a defense to product liability. The Naval Heart opinion also says that all you have to do is... They determined that intoxicated driving was not a defense. They said it's not an assumption of the risk. It's not product misuse. It's contributory negligence. It's not a defense. You can do the same analysis here as the Supreme Court by Arizona and Naval Heart and get the same result. The comparative fault finding should be reversed. If you'd like me... I've run over my time. I'm going to address the prejudgment interest, if you'd like, real briefly. I guess I have one question on that, which is if we were to agree with you that some portion of the award reflects liquidated damages, what is the date on which interest would be given? The trial court is going to have to go back and determine when they were incurred. That would have to be remanded to ask the trial court to find out when they were incurred. The problem here is that the court said, I can't figure out why the $603,000 verdict came back at all. It doesn't make any sense to me based on the evidence. And B, I can't tell if there's unliquidated damages here, so I'm not going to award anything. Well, the glaring problem with that is there's three glaring problems. One is that prejudgment interest is a matter of right in Arizona. Second is that all parties agree that only about $323,000 were proven as unliquidated damages, leaving about $279,000 was clearly liquidated in this verdict, so we were entitled to some. And the third thing is that under Arizona law, very clearly, once the verdict is entered, any unliquidated damages become liquidated. I would argue that we're entitled to the amount of liquidated damages that the jury determined up to the date of the verdict, and that we're entitled to the full verdict amount after the date of the verdict until the event of final judgment is in. And in terms of whether it should be $279,000 or $603,000, I think what we're having is we got victimized by this comparative fault instruction that was faulty. Now they knocked down our recovery system. They knocked down prejudgment interest altogether, which is our right. The fact of the matter is that the jury arrived at that figure, and I am almost 100% certain, by taking the gross damages figure, which was over a million dollars. I forgot I've got it in a footnote in my brief, and multiplied it by .57. They applied the comparative fault themselves. It comes up to the dollar. The jury placed that mistake before us, even though it does seem pretty odd, doesn't it? Right. And so what I'm saying is I'm not asking for agitator. I do think it's really terrible that we got hit with that comparative fault thing twice, which should never have been given, because then the court then deducted another 5th or 43%. But the fact of the matter is we have a right to prejudgment interest, and we should recover as much as the evidence will allow. The evidence here, the jury did that. They intended to award all of our liquidated damages, which comes just under the 603,000. It was like 603,400 something. If we were to agree that there was a legal error on the issue of comparative fault, what would be the remedy for that? Would that be remanded? Would it be resorted or retried? What's the remand you want? No, Your Honor. I think the case just needs to be remanded with instructions to the district court to, A, remove any comparative fault deduction from the final judgment, enter the full 603,000, 523,067 cents that the jury found on product liability, to then go back and award prejudgment interest on the slightly less amount of liquidated damages that the evidence supported and that wasn't even contested. Five, when those hard damages were incurred, calculate at 10% what the prejudgment interest is on that up to the date of the verdict, October 23rd, 2020, and then award all of our damages prejudgment interest on the entire verdict, 770,000 from the day of the verdict until the day of the final judgment. That's it. Do you want to reserve the rest of your time? I guess, yeah. Can I ask you just one quick question? What's the total amount that's at issue for this appeal? Is it a million dollars? Well, that's a good question. It's probably half a million, I would say. I think the deduction for comparative fault was 200,000 or 300,000. I think we have roughly the same amount of prejudgment interest. I have never understood how it paid to litigate a federal case over half a million dollars. It just strikes me as- The total damages in the case or the total amount that we're disputing on this appeal? Well, the amount that you're disputing on the appeal is what I'm trying to get at. Why isn't this a case that should be settled and that should be part of mediation? I mean, it just strikes me that there isn't- It isn't. It's costing money. Well, you're probably working on a contingency, but it's costing- It's taking your time and effort. There's an element of risk, and of course, it's costing the defendant money. It just strikes me as this is the kind of case that should be settled or at least mediated. I've wondered that myself, Your Honor. I don't have an answer for it. I'm sorry? I said I've wondered that myself, and I don't have an answer for it. It's a decision of the owners of the two companies. Okay, I'm sorry. Yeah, the total amount at issue in the case was $1,058,813.46. That's how much we reported. Thank you. Mr. Collins? Thank you, Your Honor. Good morning. Your Honor, it's Jeff Collins on behalf of Defendant Eppley and Cross Appellant Greenfield Products. I'm going to start by addressing the comparative fault argument. As the court affirmed, the district court judge chose the decision to allow the jury to consider the comparative fault in this case. As it did, and as it did quite thoroughly, the verdict finding was 57% fault on my finding, 43% on the plaintiff's note. Actually, it's the plaintiff's driver, John Walls. We're almost dealing with a 50-50 split here. Generally speaking, Your Honors, you're familiar with Arizona's Uniform Contradiction Among the Court's Agencies Act. That's the issue here. 12-2506. Obviously, the policy behind that, as acknowledged by many courts, is that in an injury case or a property damage case like this, that fault be apportioned to parties, non-parties, and fault is defined in 12-2506 as to include negligence in all of its degrees, contributory negligence, consumption of the risk, strict liability, breach of warranty, etc. Why isn't there better reading of that language? That the legislature is just saying that any of these types of faults, the whole lot of them, that might be applicable on the substantive law that's relevant should be taken into account. That seems to make more sense than to say that in this definition they meant to alter the underlying substantive law that might apply to particular types of claims. In this, it does not seem to support the latter reading. I think that's correct, Judge Collins. The clear intent of the statute was that in injury and property damage cases like this, the fault, no matter what its specific name or designation or legal theory, should be considered and fault be apportioned according to these requirements. But it only is applicable. I'm sorry. Judge Collins, I think we're asking basically the same question. It only is applicable. The amendment says the only defenses that are applicable to a claim of strict liability are misuse and assumption of risk. So, to read 2506 as kind of overruling that substantive limitation on what defenses are available and saying, you know, we look at any type of fault, even if it doesn't fit into one of the traditional categories, I'm not sure that's a correct reading of that language. Well, the legislature adopted that language, Judge Collins, as part of its legislative intent to so find that injuries like this one may apportion fault in any of its degrees to the parties. So, what I'd like to do is address really the primary claim of certainty, which is the sort of car value below in 12-2509. Jimenez addresses it head on, and I think what Jimenez says is important. Jimenez said, we read 12-2509 only as a badly worded, but successful attempt at preserving the common law rule that contributory negligence is not a defense of strict liability. That's Jimenez 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. How does that language help you? Well, that leads, thank you, Judge Corman, that leads to the question of what was the Arizona common law rule regarding contributory negligence in products liability that was a badly worded attempt at preservation. In order to find that, Judge Corman, in your honor, you have to look back at the case law. And that starts with Miller v. Dinkley, even prior to. And contributory negligence is defined by those courts as being confined to the failure to discover the defect. In Miller v. Dinkley, the court held contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product. That's not what we have in our case. According to Jimenez, the failure to discover the defect in the product. I don't understand that language. It just says what you just said in the context of that particular case. Correct, your honor. In that case, it is an example, and we're discussing that as well, Judge Corman, that Arizona courts have narrowly defined what the phrase contributory negligence means in strict products liability cases. And that is the failure to discover a defect. So when Jimenez talked about a badly worded statute trying to preserve the common law rule of contributory negligence, he's talking about preserving only that, which is the failure to discover the defect. Do you agree, though, that what is at issue here is not, does not apprise to the level of product misuse? That's correct at all. So again, when we're talking about what Jimenez was talking about, a badly worded statute preserving the common law rule of contributory negligence in Arizona courts addressing contributory negligence have limited to the failure to discover that defect, which means something other than that, like we have in this case, which is improper driving is subject to 1225-06. And that's effectively what the court in Bernal said, and I'll get to that. I don't understand that last step, because the common law rule before the statute was that the kind of defense you were making was simply not available, right? If it weren't for the statute, if you were just looking at the common law rule, you could not make an argument based on contributory negligence, of the sort that you were making, could you? Well, you could try and judge, unfortunately, it was never addressed head-on, but it has been deduced by the court in Bernal, and you could discern somewhat. Those courts considering contributory negligence in Arizona in this context have really confined it to the failure to discover the defect. What they meant by saying that is, that's the only kind of contributory negligence defense that exists. Other kinds of contributory negligence simply aren't available, right? That's what Jimenez says, it's just not applicable to strict liability, right? Well, that may be the case, Your Honor, but when you're talking about 2509, if 2509 carves out what was previously recognized, 2506, the act itself opens the possibility for all degrees of negligence. In 2509, it simply just carves out what was previously recognized, which is the failure to discover the defect. Jimenez himself said the failure to discover the defect in the product, which plaintiffs should have discovered, is contributory negligence. And then further, contributory negligence is not applicable in strict liability because the duty rests upon the ultimate consumer or user to search for the defect. So, Bernal, this is how Bernal got to his ultimate decision. Bernal discussed, the district court judge discussed the history of Arizona law regarding contributory negligence in a product case. And the court specifically held that Jimenez would likely be limited to the narrow definition of contributory negligence. It adopted, and the Arizona Supreme Court would apply the comparative fault scheme of 12-2506 in a case such as this. That's the point with regard to how Arizona courts have looked at contributory negligence. And that's the point that the district court of Bernal has said that. Bernal, did you, what, what, what, what exactly do you claim was the product, was the claim that it was the product was defective and that it should have been discovered? No, Your Honor, we're not, I'm sorry Judge Coleman, we are not, we have not alleged contributory negligence that it should have been discovered. The ultimate, the comparative fault issue in contributory negligence in this case was the jury assigned 43% to Mr. Wall, which is improper driving around a 123, 120 degree supercar with a heavy frame and a blue collar. So Bernal sums it up, Your Honor, in the district court they're predicting what the Arizona Supreme Court would do, which is apply the narrow definition of contributory negligence and that is in the other case laws. And 2509B applies to not only, and therefore, adopt the comparative fault scheme of 122506 in a case like that. And a case like that is a case like this, which is dealing with improprieties in driving. And I think Judge Miller made a good point earlier, it doesn't make any sense. For example, the example I was going to raise, if you have a one car accident into a tree, and there is an allegation that it in fact caused the car to go off the road into the tree, if another person was driving, the plaintiff would be able to assign fault to that other person based upon his own. But if the plaintiff, he or herself, were driving, the defendant would not be able to claim that that contributory negligence. And that doesn't make sense. For now, this is a perfect summary of the case law of the day, distinguishing how and when is the Miller going to apply. And as Judge Snow did in this case, probably apply 122506. And for those reasons, we believe that Judge Snow seems to allow the comparative fault discretionary, which obviously they consider wholeheartedly, and assign 43% of the fault to Mr. Walker's driving. We do take issue, Your Honors, with the position of Mark O'Krane that if this Court disagrees with the giving of the comparative fault discretion, that this case be remanded for trial. This is a case in which it was a 99% fault to my client, and a 1%. Like I said, this was almost 50-50. If Judge Snow's decision with regards to the comparative fault discretion is proper, then a full trial on the merits is warranted, given the significant consideration that this Court gave to the fault of Mr. Walker's driving. I was going to move on to the next issue on our cross-bill, and I was saying that the Court had additional questions regarding the comparative fault issue. I guess I didn't word my question correctly. What was the basis for the strict liability claim? In other words, you said contributory negligence contributed, but what did it contribute to? Thanks, Judge Coleman, I apologize. Be careful. The Mark O'Krane allegations with regards to the effect served were that the, I don't know if Your Honor is familiar with the boom dollar, but it's basically a small cart that goes behind a large crate and holds part of the boom. That that was manufactured and designed in such a manner that it was prone to tipping over. That was the general allegation, Your Honor. And at the time of the accident, Mr. Wall was going with everybody being a super turn, which was a 125-degree turn, and as Judge Snow found in his post-trial ruling, for example, evidence from the jury based upon expert testimony and speech, the three of that turned that the jury's apportionment of fault was supported by the evidence. I think you were about to turn to the cross-appeal, and can I start you out there with a question on it? On the evidence of other accidents, suppose that we agree with you that the district court misunderstood the law and that evidence of other accidents can only come in if the other accidents are substantially similar. In your brief to us, you haven't really developed the question of, were these other accidents, in fact, dissimilar? So I wonder if you could address that, because I'm having trouble seeing, even if we agree with you on what the law is, how can we reverse without some showing that, in fact, the evidence of the accidents weren't similar? Well, thank you, Your Honor. Unfortunately, and I'm not sure if this answers Your Honor's question, but unfortunately, Judge Snow scheduled a full evidence-sharing hearing on numerous pre-trial issues in which this kind of evidence was supposed to be set forth with specificity. What was intended to introduce a trial in which we would discuss each of these accidents individually. That did not occur. That trial, despite my objection's testimony, was allowed vaguely constrained similarity. So, when we tried to raise the opportunity for pre-trial evidence, you're hearing on the motion to eliminate, Your Honor, after full briefing, that was the time that that was flushed out. And unfortunately, there really was no evidence of it, using those words of similarity at trial. And you have to understand, Judge Miller, and Your Honor, that all of these accidents involving, or other accidents involving the Snow Dollars, are extremely factually specific with comparison. The eliminated ruling involved a degree of deferring the issue to later. And did you renew specific objections as things developed out at the trial to sort of tee up the discrete issues as they were presented? I did, Your Honor. And I know this is an issue that appellant has raised with regard to potential waiver on some of these issues. I did make foundational objections as set forth in the record and in our reply brief, that when these folks were getting ready to testify regarding specifically plaintiff's expert, Travis, well, that I objected with regard to the foundation of your same relevance that was overruled. So, at least to the extent of those objections, that's set forth in my brief, Your Honor, and in the record. The primary problem with the other evidence is that if the court, Judge Snow, directed us to follow up a Cooper case involving dissimilar accidents, then Cooper was limited to dissimilar prior accidents. Unfortunately, in this case, there were significant testimonies about two other accidents, Biggie and Bragg, which co-stated, number one, there wasn't foundation to prove substantial similarity in those. And number two, if the judge was admitting to Cooper that they were post-hour accidents and, therefore, inconsistent with the reasoning of Cooper, which was to allow impeachment of an expert, if the expert testifies the product of safety in the reasons in their third accident prior to your accident, then perhaps that testimony, that the product of safety is impeachable. And, unfortunately, in this case, there was evidence of Biggie and Bragg, which were significant evidentiary indications which were allowed. Well, what's the relevant sense in which similarity has to be shown? What makes it similar and what makes it dissimilar for relevant purposes? Well, I think, Judge Collins, that would probably apply on a case-by-case basis given the facts, and that's why I was trying to explain earlier in the facts of this case, when you're dealing with a heavy piece of machinery, and then you're dealing with a boom dolly, and you're dealing with a driver, and you're dealing with road conditions, that there has to be some substantial similarity and a combination of those factors as to how the accidents occurred. It's not enough just to say that accident involved a boom dolly tip-over, and this one didn't. Well, they're similar. There are way more. Well, if the claim is that if it had been designed in a particular way, tip-overs won't happen, and the absence of that feature led to the tip-over, does it matter the particular circumstances that then of the accident that produced the tip-over that would have been prevented by an alternative design of it? I think it does, Your Honor, because, I mean, obviously, no boom dolly is designed to withstand any speed at any supercar. I mean, this boom dolly was not designed for somebody in Mr. Wall's shoes to drive around a 123 turn at 60 miles an hour. That didn't happen here. That would be an absurd example, but there's no standard requirement that this boom dolly be designed to withstand any circumstances, road conditions, driver activity. What do you suggest would be the remedy? Would we send it, if we agreed with you, would we send it back for the judge to have an hearing on, initially, on the similarity issue? I think, Judge Coleman, that's the case. Yes, there would have to be another, an evidentiary, but improper evidentiary hearing with regard to substantial similarity and only allowing those that meet that foundational basis to be admitted during trial. And if there's admission of a similar accident, it may be limited to the pre-existing or pre-Marco Crane accident only. I see that a lot. Let me just, I mean, it was, you're appealing a decision to let in the evidence, right? And the decision to let in the evidence was only wrong if, in fact, the evidence was of accidents that were not similar. So in order to get relief from the Court of Appeals, isn't it your burden to show that the accidents weren't similar, which is part of showing that there was some error? Well, I think, Your Honor, it's their burden initially to show that. And over my objection, that evidence was admitted at trial. I made the proper, at least as set forth in the record before, Your Honor, the foundational objections at trial to no avail. So their initial burden is to show substantial similarity. And I voiced foundational objections. They may not have done so in the debate. And secondarily, Your Honor, there is another area of error. The judge's, the judge's purpose as set forth in his pre-trial order was to admit evidence of dissimilar accidents to impeach expert testimony that the product was the same. There was error in allowing KB and Brad and subsequent accidents to come in which was prejudicial under Rule 403. I see that I'm out of time. Does anyone else have a question? We'll give you a little time to rebuttal. Mr. Mullen. Thank you, Your Honor. All right. Real briefly, getting back to the main issue and my appeal. I'm hoping that Bernal shows how Jimenez's limited and pretty contributory negligence that is a failure to discover a defect. I don't see how that's so since somebody can deal with a contributory negligence claim. The most concrete example that was given in Jimenez was Justice Bartone's example of the gun, of the guy himself with the gun. That is not classically a failure to discover the defect. The claim there could be phrased by a creative lawyer as just carelessness with the gun in and of itself. In reality, though, it's a failure to discover and protect against a defect because it's only carelessness if that safety's not working. That's the same thing we have here. There's no accusation of him breaching any standard of care or driver. What it is, is he drove at an unreasonable speed is their claim given the propensity of that elegant tip at speeds of more than 12 miles an hour. That is classic. You can call it what you want. It's semantical games. This is classic contributory negligence. It's just not a defense in Arizona. Now, in terms of I think your honors were right on the other accidents thing. There hasn't been any showing made that there was a dissimilarity. In fact, their representative admitted at least the Biggie accident which is the mean one that he complains about was similar to ours. And if you look at the Black and Decker case in Iceland, I forget which circuit that's out of, but all that's required is it's the same prop and the same type of injury. That's what we've got here. We've got all W3 dollars. We're not talking about different brands, different models. We're not talking about any of that. They all rolled over. There is no showing even if he made timely objections. He hasn't met his burden to show that he did not. The first objection to this came in after his representative testified about other accidents for pages of the record. And do you think that five accidents is too many? It's a personal opinion. I think your honor, because there were no timely objections to this, you have to look at this from a plain or fundamental error standard and you have to isolate it so that the instances where he did raise objections did, allowing those questions to go forward, those particular questions constitute fundamental error and the answer is no way. No way. This is a preserved, other than for a fundamental error challenge, he hasn't argued or shown fundamental error and he hasn't shown just even the basis that even if he had made objections, he would have won them. The appeal is he hasn't met any burden. Is there anywhere in the record where you actually discussed the facts of the prior or prior and subsequent accidents? A little bit and it started with their own witness at the beginning of trial talking about how he participated in investigations of other accidents. Yes. Their own witness started off with it and then they had another witness who justified about it, Josh Myers, without any objections, their expert justified about the other accidents and then they presented their argument instead of arguing that the shouldn't come into the judge at trial, they argued it to the jury. They accused us of committing a smokescreen from the issues at hand, they used it for their advantage and this is precisely what this court held in, I think it was Scott v. Ross. You don't get a second bite of the apple, you don't get to see what the jury is going to do and then come back and complain about it and say, I want another bite of the apple. It's just not proper. They haven't met burden and those aspects of the trial should be affirmed. Thank you, Mr. Rolland. Mr. Collins, I will give you a minute for rebuttal. Hey, Karen, I'm sorry about that. Just breaking on the comparative, Judge Snow reached a decision in this case after reading Bernal and applying Bernal. Bernal itself said what it said, which I discussed with your honors today. I haven't heard anything as to why the reasoning of Judge Snow or the Bernal Court improper in spite of this case in assigning comparative fault to the jury of 43% to this driver. Bernal went through the process of examining the history of the cases before this court and distinguished it and limited those cases and predicted how that judge felt that the Arizona Supreme Court would rule on the issue. Pretty similar fact analysis back here and therefore our position is that Judge Snow's ruling in that regard was well-founded. Briefly on the remedial issues, there was a subsequent incident in working in conjunction with that company making, there were some modifications made in the testimony and so forth in the record. Those modifications were made to make tip-overs less likely or less likely to occur. Clearly, that was remedial. The only real response from the appellate on that issue was that it was not voluntary. The remedial measure cited an in-ring air crash which involved an FAA report that Pan Am had to comply with. Clearly, this was voluntary. It was done in conjunction with the second pushback seemed to be that it was admissible to impeach our witnesses if the product was safe. In Johnson's case, the Arizona Appellate Court case said you cannot admit that evidence unless it directly impeaches witness testimony. It must be an exaggerated claim to witness or the expert that this is the safest possible which was the example of Edwin Johnson. That's not the case here. Did you make a timely objection to this in charge of this remedial argument that you're making? As opposed to the two issues I suppose they're related more to the other accidents and the other remedial. We believe we did, Your Honor, for the reason set forth in the briefing and the record. And I guess importantly, it's also procedurally important to understand how this happened. This particular issue as well as the other accidents were subject to motions eliminating number one and number four, Judge Stoneward and evidence you're hearing with complete briefing and exhibits of witnesses that Mark O'Krane was known to introduce on this issue. It didn't happen. At least to the extent that we feel was appropriate. There was court's order 925-20 Rule of Nominization that's in the record. And based upon Halloran v. Riverside case that decided the objections were properly preserved, the subject was explored and Judge Stoneward ruling was explicit. So to answer your question, yes, we think that they were properly approved to preserve both the trial and prior to Judge Stoneward's ruling on those issues prior to that. I just want to be sure that I have the sequence right. My understanding on the subsequent remedial measures part at least you filed the motion to eliminate to exclude that. The district court said, I'm denying the motion because I think the evidence would be relevant to responding to your state-of-the-art defense. Which you then subsequently said, well, we're actually not going to present that defense. But you did not then go back to the district court and say hey, now that we're not presenting that defense please reconsider and exclude the remedial measures evidence. Do I have that right? I think that's generally correct, Judge Miller. Notwithstanding any of the trial objections that were raised on these issues that I've put on the record, but I'm not recalling them and can't see here, but I agree with your Honor that there's certainly nothing more formal than that that I think answers the question. Thank you very much. Thank both counsel for their helpful arguments this morning on the cases submitted. And that concludes our calendar for the day. And we are adjourned until tomorrow. Thank you. All rise. This court for this session stands adjourned.
judges: MILLER, COLLINS, Korman